**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1470
_____

MORRIS ROAD PARTNERS, LLC;
*LEDERACH ELECTRIC, INC.,

Petitioners

v.

THE NATIONAL LABOR RELATIONS BOARD,

Respondent

*(Amended per the Clerk's 4/13/15 Order)
_____

No. 15-1884
_____

THE NATIONAL LABOR RELATIONS BOARD,

Petitioner

v.

MORRIS ROAD PARTNERS, LLC & LEDERACH ELECTRIC, INC.,

Respondents


On Petition for Review of an Order of the
National Labor Relations Board
(NLRB No. 04-CA-037725)

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 12, 2015

Before: CHAGARES, RENDELL, and BARRY, Circuit Judges.

(Filed: January 19, 2016)

_____

OPINION*
_____

CHAGARES, Circuit Judge.

Morris Road Partners, LLC ("MRP") and Lederach Electric, Inc. ("LEI") filed a

petition for review of a National Labor Relations Board ("NLRB") Order holding that the

petitioners were a "single employer," and therefore jointly and severally liable for LEI's

previously determined back pay liability of $122,229.06. The NLRB cross-petitioned to

enforce its order. For the following reasons, we will deny the petition for review and

grant the petition to enforce the NLRB's Order.

I.

We write solely for the parties and therefore recite only the facts necessary to our

disposition. In the underlying matter, on March 4, 2013, the NLRB held that LEI owed

$122,229.06 in backpay for laying off certain employees for engaging in protected labor

practices. Appendix ("App.") 33. On September 24, 2013, the NLRB's Regional

Director of the Fourth Region pursued compliance proceedings to determine whether

MRP and LEI were a single employer and jointly and severally liable for the backpay.

App. 43-46. After a hearing, Administrative Law Judge Arthur J. Amchan found that

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

2

LEI and MRP were not a single employer, but on February 3, 2015, the NLRB reversed, holding that LEI and MRP were a single employer, and therefore jointly and severally liable for the unfair labor practices at issue. App. 3-5. This Second Supplemental Decision and Order ("Order") was the NLRB's final order. On February 23, 2015, MRP petitioned this Court for review of the Order, and on April 10, 2015, the NLRB cross-petitioned for enforcement of its Order against the parties. App. 1-2.

LEI was an electrical contractor incorporated in Pennsylvania. App. 59. When LEI dissolved in late 2012, James Lederach owned 100% of its stock. App. 59. James Lederach and Judy Lederach were the sole officers of LEI. James exercised complete managerial, financial, and operational control of LEI, and Judy signed LEI's checks. App. 59. From 1986 until it dissolved in late 2012, LEI leased an office in the Lederach Commons Building, which is owned by MRP. App. 59-60.

MRP is a real estate property management company incorporated in Pennsylvania. App. 60. James and Judy each own 50% of the shares of MRP, and have been its only managers, running its day-to-day business. App. 60. Judy signs all of MRP's checks. App. 60. MRP has never had any employees. App. 60. MRP and LEI share the same post office box. App. 59-60. MRP and LEI have separate bank accounts, pay their bills separately, and file separate tax returns. App. 19. Occasionally, MRP's tenants dropped off their rent payments at LEI's office, and sometimes James used LEI's phone for MRP business, instead of his cell phone as he usually did for MRP business. App. 15.

LEI had a rental lease with MRP and was required to pay $3,000 a month for rent. App. 62-74. Sometime around 2008 and 2009, LEI's financial situation began to

3

deteriorate. App. 16. James said that LEI did not pay MRP rent because he knew MRP would not sue LEI for rent, but, of course, LEI's other creditors could sue LEI if it failed to meet its obligations. App. 18-19. Subsequently, from January 1, 2009 through March 2012, LEI accumulated a debt of $62,000 in rent owed to MRP, inconsistently paying rent, if at all. App. 60, 75-78. Even when LEI paid rent, it did so in a piecemeal way. For example, in 2010, LEI failed to pay rent for eight different months but paid $25,000 in the month of December. App. 76. LEI decided to wind down in 2011, paying its oldest debtors first. App. 19. The remaining debtors were MRP and the parties associated with this matter. App. 19.

## II.

The NLRB had jurisdiction pursuant to the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(a), which empowers the NLRB to prevent unfair labor practices that affect commerce. This Court has jurisdiction to review the final orders of the NLRB pursuant to 29 U.S.C. §§ 160(e), (f).

"We afford considerable deference to the Board." Grane Health Care v. N.L.R.B., 712 F.3d 145, 149 (3d Cir. 2013). We will uphold "the Board's interpretation of the NLRA as long as it is rational and consistent with the Act." 800 River Rd. Operating Co. LLC v. N.L.R.B., 784 F.3d 902, 906 (3d Cir. 2015) (citations omitted) (quotation marks omitted). "'[I]f the Board's application of such a rational rule is supported by substantial evidence on the record,'" we will enforce the Board's order. Id. (quoting Fall River Dyeing & Finishing Corp. v. N.L.R.B., 482 U.S. 27, 42 (1987)). Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support

4

a conclusion.'" Id. (quoting Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966)). Our Court has held that "we defer to the Board's credibility determinations," and we will reverse them "only if they are inherently incredible or patently unreasonable." Grane Health Care, 712 F.3d at 149 (quotation marks omitted).

## III.

When the NLRB determines two entities are a single employer, both are jointly and severally liable for the unfair labor practices committed by either. Id. at 150. Whether there is single employer status depends on "'all the circumstances of the case'" and is "'characterized as an absence of an arm's length relationship found among unintegrated companies.'" Id. at 150 (quoting N.L.R.B. v. Browning–Ferris Indus. of Pa., Inc., 691 F.2d 1117, 1122 (3d Cir. 1982)). Four factors are considered to determine whether single employer status exists: "'(1) functional integration of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership.'" Id. at 150 (quoting Browning–Ferris Indus. of Pa., Inc., 691 F.2d at 1122). No one factor by itself is controlling, but the first three factors, especially centralized control over labor relations, are considered "more compelling" than the fourth factor, common ownership. Id.

Two of the factors for single employer status do not appear to be in dispute in this case — common ownership and common management. The NLRB called these factors "clearly established," App. 4, and we agree. James Lederach owned LEI, and he owned MRP together with his wife. That establishes common ownership. James managed and controlled LEI, and he and Judy managed MRP. That establishes common management.

5

The remaining two factors for single employer status are functional integration of operations and centralized control over labor relations. See Grane Health Care, 712 F.3d at 150. Sufficient evidence supported the NLRB's determination that there was functional integration of operations. LEI amassed a debt to MRP of $62,000 in back rent over approximately three years. MRP never attempted to recover it. There is no evidence in the record that MRP attempted to evict LEI. The pattern of rent payment — months of paying no rent, and then a huge lump sum payment of $25,000 in December 2010, for example — suggests interrelated operations between the companies. MRP argues that LEI stopped making rent payments to MRP to pay its other creditors first, demonstrating a lack of self-dealing and interrelatedness. According to MRP, had LEI first paid MRP, it would have been a self-dealing transaction—and grounds to attack MRP or the Lederachs for defrauding other creditors. But the fact that MRP took no action to remedy the failure to pay rent, including eviction or threat of legal action, support a finding that there was functional integration of the operations.

Other evidence supports the determination that the operations were functionally integrated. MRP and LEI shared a post office box, and Judy Lederach signed both companies' checks. MRP's tenants occasionally dropped off their rent at LEI's office, and James Lederach sometimes used LEI's phone for MRP's business. MRP calls these facts "trivial and insignificant," noting for example, separate bank accounts and assets, separate offices, and no common business purpose.[1] But taken into consideration with

---

[1] We reject LEI's contention that it and MRP cannot be a single employer because they are not engaged in the same business. See, e.g., Mini-Togs, Inc., 304 N.L.R.B. 644, 646

6

the rent arrangement, these facts in their entirety support a finding of single employer status. See, e.g., Grane Health, 712 F.3d at 150 ("Single employer status ultimately depends on all the circumstances of the case and is characterized as an absence of an arm's length relationship found among unintegrated companies.").

We agree with the NLRB that even though there is no evidence of the remaining factor, centralized control of labor relations, that is not fatal to the finding that there is single employer status. MRP makes much of the importance of this factor, arguing that it is "key" and the "most critical." However, centralized control of labor operations is not determinative or controlling. See, e.g., Grane Health Care, 712 F.3d at 150. Considering all of the circumstances, it may be appropriate to find single employer status even when there is no centralized control of labor relations, as is the case here.

The NLRB held that the control over labor relations factor is afforded less weight when one of the entities has no employees, like MRP. App. 4. MRP makes policy arguments that this finding goes against the purpose of the NLRA, which regulates labor activity, and should not apply to an entity that has no employees, like MRP. However, we agree with the authority cited by the NLRB. See, e.g., Three Sisters Sportswear Co., 312 N.L.R.B. 853, 863 (1993) ("[the] centralized control of labor relations . . . factor becomes less important where some of the companies have no employees") (citations

_____

(1991) (finding that a company that manufactures children's clothing, a company that manufactures baby bottles, and a company that offers embroidery services, are single employers); D & S Leasing, 299 N.L.R.B. 658, 660 (1990) (finding that a trucking company, a parent company, and a dockwork company, are single employers), enforced, 954 F.2d 366 (6th Cir. 1992).

omitted), enforced, 55 F.3d 684 (D.C. Cir. 1995); see also Bolivar-Tees, Inc., 349

N.L.R.B. 720, 722 (2007) ("Our finding of single-employer status is not undercut by the

lack of specific evidence indicating centralized control of labor relations."), enforced, 551

F.3d 722 (8th Cir. 2008). In addition, as noted earlier, our case law is clear that no one

factor, including control of labor, is necessary to a finding of single employer status. See,

e.g., Grane Health Care, 712 F.3d at 150. Therefore, the NLRB did not err in

downplaying this factor in the circumstances of this case.

Considering the business arrangements in their entirety, and in light of the factors

to be analyzed in determining single employer status, substantial evidence supports the

NLRB's finding that there was a single employer relationship between LEI and MRP.

IV.

For the foregoing reasons, we will deny the petition for review and grant the

petition to enforce the NLRB's Order.